ELLEN K. WOLF (SBN 110686)
ewolf@wolfwallenstein.com
KEOBOPHA KEOPONG (SBN 280737)
kkeopong@wolfwallenstein.com
**WOLF WALLENSTEIN, PC**
11400 West Olympic Boulevard, Suite 700
Los Angeles, California 90064
Telephone: (310) 622-1000
Facsimile: (310) 457-9087

GERRY SILVER (seeking admission *Pro Hac Vice*)
gsilver@sullivanlaw.com
**SULLIVAN & WORCESTER LLP**
1633 Broadway, 32nd Floor
New York, NY 10019
Telephone: (212) 660-3096
Facsimile: (212) 660-3001

Attorneys for Plaintiff
ADAM LEVINE LIVING TRUST

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM LEVINE LIVING TRUST,<br><br>                Plaintiff,<br><br>v.<br><br>RICK COLE, an individual,<br><br>                Defendant. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES AND/OR RESCISSION**<br><br>Jury Trial Demanded |

Plaintiff Adam Levine Living Trust ("Plaintiff" or the "Trust"), as and for its Complaint herein as against defendant Rick Cole ("Defendant" or "Cole"), alleges as follows.

## NATURE OF THE ACTION

1.     This action arises out of a serious fraud perpetrated on the Trust by Cole, a classic car dealer, regarding a purported 1971 Maserati Ghibli 4.9 Liter Spyder, Vin.# AM115.492.1241 (the "Vehicle"), which was sold to the Trust on or about January 11, 2021.

2.     In particular, Cole represented the Vehicle as being the Ghibli Spyder 4.9 Liter Engine with the Vin.# AM115.492.1241 (the "#1241"), *i.e.*, with a clear and indisputable identity. As per the Maserati website, only approximately 25 Ghibli Spyders featuring the 4.9 liter engine were produced,[1] making such a car, with its true identity and provenance intact, extremely desirable and valuable in the current classic car market. The Trust, understandably, reasonably relied on Cole's expertise in the classic car business, and Cole's representation that the Vehicle was *the* Ghibli Spyder 4.9 Liter #1241.

3.     However, when the Trust subsequently tried to market the Vehicle for sale, including by bringing the Vehicle to Autosport Designs, Inc. ("Autosport"), among other classic car experts, the Trust—for the first time—learned that the Vehicle is not the #1241. Indeed, the Trust learned that Autosport had previously owned and sold the real #1241 on several occasions, most recently several years ago to British luxury car collector Clive Joy, and that the real #1241 has been in Switzerland ever since as part of Clive Joy's collection, under the care of legendary race car driver Christian Traber (the "Real #1241").

4.     As more fully set forth below, it is now readily apparent that Cole was well aware that the Vehicle is not the actual #1241, and that the Vehicle has a

---

[1] https://www.maserati.com/us/en/brand/maserati-classic-cars/gran-turismo/ghibli-spyder

COMPLAINT

substantial cloud over its identity, authenticity, and provenance, crippling its market value to a figure far less than that paid by the Trust. At the very least, Cole was well aware that there was another Maserati Ghibli 4.9 Liter Spyder in existence purporting to be the Real #1241, which in and of itself severely damages the market value of the Vehicle. However, Cole egregiously never disclosed any of this to the Trust, withholding this information in order to make substantial monies on the sale.

5. In this action, the Trust seeks rescission of the Vehicle sale and the costs it has incurred as a result of purchasing the Vehicle, or, in the alternative, damages for the losses it has suffered in connection with the purchase of the Vehicle, in an amount to be determined at trial, but believed to be in excess of $850,000. Cole has refused to provide either of these remedies, despite due demand.

## THE PARTIES, JURISDICTION AND VENUE

6. The Trust is a citizen of the State of California, residing in Los Angeles, California. It is organized under the laws of the State of California, has a principal place of business in the State of California, and its Grantor and Beneficiary are citizens of the State of California.

7. Upon information and belief, Cole is a citizen of the State of Texas, residing at either 49 Briar Hollow Lane Unit 1103, Houston, Texas 77027, or 19 Briar Hollow Lane, Suite 261, Houston, TX 77027.

8. Cole is an expert classic car dealer. For example, Cole's website provides: "Closing in on 50 years in his field, Rick Cole has sold just about every collectible make and model of automobile; from antiques and classics to important sports and racing cars from every era. As an auctioneer for more than 25 years, he has sold more than 20,000 automobiles at multiple venues and created the first car

auction during Pebble Beach Concour's week. Early on in his career, he informally earned a reputation as 'Auctioneer to the Stars', having sold to and for Hollywood royalty for decades. His famous clients have included, but have not been limited to Frank Sinatra, Nancy Sinatra Jr., Nancy Sinatra, Sr., Dean Martin, Steve McQueen, Johnny Carson, Henry Mancini, Robin Williams, Zsa Gabor, Sylvester Stallone, Jay Leno, and Adam Levine." <u>See</u> https://rickcole.com.

9.    The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

11.    This Court has personal jurisdiction over Cole because Cole regularly does business in the State of California, including regularly selling cars into the State of California.  As set forth herein, Cole solicited the Trust in the State of California regarding the subject sale or trade of the Vehicle, delivered the Vehicle to the Trust in California, committed one or more of the fraudulent acts and omissions complained of herein within the State of California, and/or caused injury or damages to the Trust in the State of California.  Further, California law governs this dispute.

12.    Venue is proper in this District because, among other reasons, the Trust resides in this District.

## FACTS COMMON TO ALL CLAIMS

13.    In or about December 2020, Cole approached the Trust about a possible classic car trade.  Cole purported to have found an authentic Maserati Ghibli 4.9 Liter Spyder that he described as being "as good" as an authentic Maserati Ghibli 4.9 Liter Spyder with a clear and indisputable identity that a representative of the

1  Trust had seen and drove in Monterey a year or so earlier, and which was valued at

2  over $1 million.

3      14.    Cole proposed the Trust trading two Ferraris, (i) a 1972 Ferrari 365

4  GTC/4 Vin 15497, and (ii) a 1968 Ferrari 365 GTC, Vin 12079 (the "Ferraris"),

5  which together were valued at $950,000, for the vehicle Cole was referencing, which

6  Cole expressly stated was the "1971 Maserati Ghibli 4.9 Liter Spyder, Vin.#

7  AM115.492.1241", i.e., the "Vehicle", and provide the Trust with $100,000, thereby

8  declaring the value of the Vehicle as being $850,000.  Based on Cole's express

9  representations, the Trust agreed to the Trade (see "Trade Document" annexed

10  hereto as Exhibit A).[2]

11      15.    As discussed above, at the time of the transaction, Cole was well aware

12  that the Vehicle was not the actual #1241, and that the Vehicle had a substantial

13  cloud over its identity, authenticity, and provenance.  At the very least, Cole was

14  well aware that there was another Maserati Ghibli 4.9 Liter Spyder in existence

15  purporting to be the Real #1241.  However, Cole fraudulently represented the

16  Vehicle as the "#1241", and never disclosed the existence of the Real #1241 to the

17  Trust.

18      16.    The following makes it clear that Cole was aware of the all the

19  foregoing, and otherwise omitted the following key facts:

20      (i)    The Vehicle was initially up for auction at Retromobile, the annual

21          classic auto show held in Paris, France, in 2015, but it was withdrawn

22          from auction because of a controversy concerning its chassis number

23

24  [2] Although the Trade Document denotes the seller as Legendary Motorcars, Inc. ("Legendary Motorcars"), Cole has recently confirmed to the representatives of the Trust that Legendary Motorcars had nothing whatsoever to do with the trade and that Cole was acting in his individual capacity.  Legendary Motorcars has confirmed this as well.

COMPLAINT

and origin;

(ii)    The fonts of the 1, 2 and 4 of the "1241" on the chassis of the Vehicle are not correct or in keeping with Maserati's stamping style of the period (Maserati, in contrast, used Italian lettering and numbering);

(iii)   The stars before and following the "1241" on the chassis are not correct for the period. Rather, the style of stars on the chassis was not used until approximately the end of 1976;

(iv)    The "S" for Spyder on the chassis is incorrectly located after the "49", but, in contrast, Maserati's practice was to stamp the "S" on the chassis before the "49"; and

(v)     The fonts stamped on the red identification label are not Maserati fonts.

17.    Even worse, it appears that numerous steps were taken by Cole and/or his agents before and/or after the Retromobile auction referenced above in an intentional and purposeful attempt to give the Vehicle an identity that it did not truly have, namely by fraudulently passing it off as the #1241.

18.    First of all, it appears that at some point an engine stamped #1241 was connected to the Vehicle, but that engine number was mis-stamped with the "S" stamped before the "49", as opposed to more accurately being stamped following the "49", which was Maserati's practice at the time.  It appears that someone tried to give the Vehicle an identity by copying the stamping of the engine number onto the chassis, but with the "S" in the wrong place, not realizing that the erroneous placement of the "S" on the chassis would be a giveaway to classic car experts that the Vehicle is not the Real #1241.

19.    Second, sometime after the Vehicle was withdrawn from auction at

COMPLAINT

Retromobile in 2015 due to there being serious questions about the Vehicle's identity, but before the sale to the Trust in 2021, a new stamp was applied to the chassis of the Vehicle.  The lettering, numbering and stars on the new stamp were all changed to make them each look more like the actual lettering, numbering and stamping used by Maserati in the 1971 time period (although they are still incorrect). This demonstrates that, after the questioning of the authenticity of the Vehicle at Retromobile, someone tried to make the Vehicle appear authentic by reproducing or stamping a new chassis plate to make the writing seem more like that used by Maserati at the time, in an obvious attempt to convince a potential buyer that the Vehicle was the #1241.  Upon information and belief, it was Cole and/or his agents who made these changes.

20.    Third, Cole provided the Trust with a Technical and Aesthetic Characteristics Certificate, dated February 8, 2013 and signed by Fabio Collina (the "Certificate"), passing it off as supposedly relating to the Vehicle.  However, as is clear from the description of the Real #1241 set forth above, that Certificate relates to the Real #1241, not the Vehicle, and Cole's portrayal of the Certificate as pertaining to the Vehicle is a complete and utter deception.

21.    Fourth, even after the sale, Cole and/or his agents temporarily took back the Vehicle back from the Trust and continued to make changes clearly designed to try to make the Vehicle appear authentic.

22.    Fifth, Cole repeatedly discouraged the Trust from selling or marketing the Vehicle, and encouraged the Trust to keep it, because Cole obviously feared that if the Trust marketed the Vehicle, it would eventually learn the truth concerning its lack of authenticity and corresponding decrease in market value.

COMPLAINT

23.    Nevertheless, as set forth above, subsequent inspection and investigation revealed that the Vehicle is not authentic.

24.    Thus, the identity of the Vehicle is, at the very least, in serious doubt. It is not the Real #1241.  It may be an original Ghibli Spyder in which, as set forth above, someone got a hold of the engine and then stamped the Vehicle to try to match the engine.  Or, it could just be a converted Ghibli Coupe, in which the original chassis plate was removed and replaced with plate number AM11549S*1241* in an attempt to make the Vehicle more attractive.  But either way, the Vehicle is not authentic, has no identity and/or has a very questionable identity, which seriously undermines its value.

25.    The bottom line is that Cole knowingly misrepresented the Vehicle as the #1241, took active steps to fraudulently falsify the Vehicle as the #1241, and fraudulently omitted the fact that serious questions existed regarding the identity of the Vehicle.  It is also clear that Cole did so to induce the Trust to purchase the Vehicle (through a trade) at a substantially over-inflated price.

26.    Nevertheless, Cole has refused to return the Trust's purchase price and costs incurred by the Trust as a result of purchasing the Vehicle, despite due demand.

## FIRST CAUSE OF ACTION

### (Negligent Misrepresentation)

27.    The Trust repeats and realleges each and every allegation above as if fully set forth herein.

28.    Cole represented that the Vehicle was "as good" as an authentic Maserati Ghibli 4.9 Liter Spyder a representative of the Trust had seen and drove, that the Vehicle was *the* "Maserati Ghibli 4.9 Liter Spyder, Vin.#

AM115.492.1241", and that the Vehicle was and is authentic.

29.    Whether the Vehicle is authentic is a material fact.  The Trust, like any reasonable consumer, would not have purchased the Vehicle had it known that it was inauthentic.

30.    The Vehicle is not an authentic "Maserati Ghibli 4.9 Liter Spyder, Vin.# AM115.492.1241".

31.    As set forth above, Cole, alternatively, knew that the Vehicle was and is not authentic at the time the representations were made as to the Vehicle's authenticity or acted with reckless disregard of the truthfulness of the representations that the Vehicle was and is authentic at the time the representations were made as to its authenticity.

32.    Cole's representations regarding the Vehicle, including that the Vehicle is the #1241 and is authentic, were made with the intention of inducing, and did actually induce, the Trust to justifiably rely on them and cause the Trust to purchase the Vehicle (via trade).

33.    As set forth above, Cole is an expert classic car dealer with close to 50 years in the field.  See https://rickcole.com.  The Trust, on the other hand, is not in the classic car business at all, and the Trust reasonably and justifiably relied on Cole's expertise and the representations Cole made that the Vehicle is authentic.   The Trust also reasonably and justifiably relied on Cole given the fact that Cole had sold cars to the Trust in the past, without any known issues.

34.    As a result of Cole's negligent misrepresentations as set forth above, the Trust traded the Ferraris valued at $950,000 (less $100,000 in cash back) for the Vehicle, which is not authentic nor the #1241 as represented by Cole.

COMPLAINT

35.     As a result of the foregoing, the Trust is entitled to rescission.

36.     In the alternative, as a result of the foregoing, the Trust has suffered and is entitled to damages in an amount to be determined at trial, but believed to be an amount not less than $850,000.

## SECOND CAUSE OF ACTION

### (Intentional Misrepresentation)

37.     The Trust realleges each and every allegation set forth above as if fully set forth herein.

38.     Cole represented that the Vehicle was "as good" as an authentic Maserati Ghibli 4.9 Liter Spyder that a representative of the Trust had seen and drove, that the Vehicle was *the* "Maserati Ghibli 4.9 Liter Spyder, Vin.# AM115.492.1241", and that the Vehicle was and is authentic.

39.     Whether the Vehicle is authentic is a material fact.  The Trust, like any reasonable consumer, would not have purchased the Vehicle had it known that it was inauthentic.

40.     The Vehicle is not an authentic "Maserati Ghibli 4.9 Liter Spyder, Vin.# AM115.492.1241".

41.     As set forth above, Cole did not have a reasonable basis to believe that the Vehicle was and is authentic.  Indeed, as set forth above, Cole was well aware that it was not authentic, or that it may not be authentic, because, among other reasons, it was pulled from the Retromobile auction due to doubts about its authenticity, there is another Maserati Ghibli 4.9 Liter Spyder that is known as, or at least purports to be, the Real #1241, and there are numerous other aspects of the Vehicle that an expert such as Cole would realize demonstrate a lack of authenticity.

42.    Cole's representations regarding the Vehicle, including that the Vehicle is the #1241 and is authentic, were made with the intention of inducing, and did actually induce, the Trust to justifiably rely on them and cause the Trust to purchase the Vehicle (via trade).

43.    Under the circumstances, including that Cole is an expert classic car dealer and the Trust, on the other hand, is not in the classic car business at all, the Trust reasonably and justifiably relied on Cole's expertise and the representations Cole made that the Vehicle is the #1241 and is authentic.  The Trust also reasonably and justifiably relied on Cole given the fact that Cole had sold cars to the Trust in the past, without any known issues.

44.    As a result of Cole's intentional misrepresentations as set forth above, the Trust traded the Ferraris valued at $950,000 (less $100,000 in cash back) for the Vehicle, which is not authentic nor the #1241 as represented by Cole.

45.    As a result of the foregoing, the Trust is entitled to rescission.

46.    In the alternative, the Trust has suffered and is entitled to damages in an amount to be determined at trial, but believed to be an amount not less than $850,000, as well as punitive damages.

## THIRD CAUSE OF ACTION

### (Fraudulent Concealment)

47.    The Trust realleges each and every allegation set forth above as if fully set forth herein.

48.    Cole represented that the Vehicle was "as good" as an authentic Maserati Ghibli 4.9 Liter Spyder that a representative of the Trust had seen and drove, that the Vehicle was *the* "Maserati Ghibli 4.9 Liter Spyder, Vin.#

AM115.492.1241", and that the Vehicle was and is authentic.

49.    Cole concealed and/or suppressed material facts concerning the Vehicle, specifically the fact that the Vehicle was not authentic, the existence of the Real #1241, and/or the fact that there was another car in existence purporting to be the #1241.

50.    The authenticity of the Vehicle is a fact that was known and/or accessible only to Cole, who had superior knowledge due to the work that Cole and/or his agents had done on the Vehicle before and/or after Retromobile, and Cole's superior knowledge as to the history and prior ownership of the Vehicle.

51.    Whether the Vehicle is authentic is a material fact.  The Trust, like any reasonable consumer, would not have purchased the Vehicle had it known that it was inauthentic.

52.    Cole actively concealed and/or suppressed material facts concerning the Vehicle's authenticity with the intent to induce the Trust to purchase the Vehicle.

53.    The Trust reasonably and justifiably relied on Cole's representations and omissions given his experience in the classic car business and purported reputation as "Auctioneer for the Stars" as set forth above, and the fact that the Trust is not in the classic car business at all.  The Trust also reasonably and justifiably relied on Cole given the fact that Cole had sold cars to the Trust in the past, without any known issues.

54.    As a result of Cole's intentional misrepresentations as set forth above, the Trust traded the Ferraris valued at $950,000 (less $100,000 in cash back) for the Vehicle, which is not authentic nor the #1241 as represented by Cole.

55.    As a result of the foregoing, the Trust has suffered and is entitled to

COMPLAINT

damages in an amount to be determined at trial, but believed to be an amount not less than $850,000.

## FOURTH CAUSE OF ACTION

### (Mutual Mistake)

56.    The Trust repeats and realleges each and every allegation above as if fully set forth herein.

57.    Cole represented that the Vehicle was "as good" as an authentic Maserati Ghibli 4.9 Liter Spyder a representative of the Trust had seen and drove, that the Vehicle was *the* "Maserati Ghibli 4.9 Liter Spyder, Vin.# AM115.492.1241", and that the Vehicle was and is authentic.

58.    Whether the Vehicle is authentic is a material fact. The Trust, like any reasonable consumer, would not have purchased the Vehicle had it known that it was inauthentic.

59.    The Vehicle is not an authentic "Maserati Ghibli 4.9 Liter Spyder, Vin.# AM115.492.1241".

60.    The Trust was mistaken and Cole, alternatively, was mistaken as to the Vehicle's authenticity, as both at the time of the Retromobile auction believed the Vehicle to be authentic, but it is not authentic.

61.    At all relevant times, the Trust exercised reasonable diligence, under the circumstances, and acted in good faith in accordance with reasonable standards of dealing.

62.    That the Vehicle is not authentic was not readily detectable by the Trust by the means of inspection, as no inspection was available to the Trust and, in any event, the Trust is not a classic car expert and was not in position to detect the lack

1 | of authenticity of the Vehicle.

2 | 63.    Cole, alternatively, would not have sold the Vehicle to the Trust, and

3 | the Trust would not have purchased the Vehicle, but for the mistake as to the

4 | Vehicle's authenticity.

5 | 64.    As a result of the foregoing, the Trust is entitled to rescission.

6 | 65.    In the alternative, as a result of the foregoing, the Trust has suffered and

7 | is entitled to damages in an amount to be determined at trial, but believed to be an

8 | amount not less than $850,000.

9 | ## FIFTH CAUSE OF ACTION

10 | ### (Breach of Express Warranty)

11 | 66.    The Trust repeats and realleges each and every allegation above as if

12 | fully set forth herein.

13 | 67.    The Transaction Document constituted an express warranty under

14 | California Commercial Code § 2313(1)(a)-(b), as it included factual statements

15 | made by Cole as to the Vehicle's authenticity that became part of the basis of the

16 | bargain resulting in the sale of the Vehicle to the Trust.

17 | 68.    The Vehicle sold did not conform to the Trade Document description

18 | because the Vehicle is not an authentic "Maserati Ghibli 4.9 Liter Spyder, Vin.#

19 | AM115.492.1241" as stated in the Trade Document.

20 | 69.    As a result of the foregoing, the Trust has suffered and is entitled to

21 | damages in an amount to be determined at trial, but believed to be an amount not

22 | less than $850,000.

23 | ///

24 | ///

COMPLAINT

## SIXTH CAUSE OF ACTION

### (Breach of Contract)

70.     The Trust repeats and realleges each and every allegation above as if fully set forth herein.

71.     In the Trade Document, Cole agreed to sell the Trust the "Maserati Ghibli 4.9 Liter Spyder, Vin.# AM115.492.1241" for the Ferraris valued at $950,000, with $100,000 cash back, for a total purchase price of $850,000.

72.     Cole also agreed in the Trade Document to "deliver good and merchantable USA title to the Vehicle".

73.     The Trust performed its obligations under the Trade Document by transferring the Ferraris to Cole as payment for the Vehicle.

74.     Cole breached parties' agreement because the Vehicle was not the "Maserati Ghibli 4.9 Liter Spyder, Vin.# AM115.492.1241" as stated in the Trade Document.

75.     Further, Cole breached the parties' agreement because he has failed to deliver to the Trust good and merchantable United States title to the Vehicle.

76.     As a result of the foregoing, the Trust has suffered and is entitled to damages in an amount to be determined at trial, but believed to be an amount not less than $850,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the Trust, requests judgment as follows:

1.     Entry of Judgment in the Trust's favor and against Cole rescinding the Vehicle sale and awarding the Trust all the fees, costs and expenses it has incurred, including the purchase price and all associated costs, in an amount to be determined

COMPLAINT

at trial, together with interest thereon;

2.      In the alternative, entry of Judgment in the Trust's favor as against Cole for damages the Trust has suffered and all the fees, costs and expenses it has incurred, including the purchase price and all associated costs, in an amount to be determined at trial but believed to be an amount not less than $850,000, together with interest thereon;

3.      In connection with the Trust's claim of intentional misrepresentation, punitive and exemplary damages; and

4.      Grant such other and further relief as this Court deems fair and equitable.


DATED: February 17, 2023            Respectfully submitted,

                                    **WOLF WALLENSTEIN, PC**


                                    By: _____/s/Keo Keopong_____
                                        Ellen Wolf, Esq.
                                        Keo Keopong, Esq.

                                    Attorneys for Plaintiff
                                    ADAM LEVINE LIVING TRUST

4887-5525-2049, v. 2